UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE L.G.C.,[1] | No. 1:26-cv-03680-TLN-CSK |
| Petitioner, | A# 213-474-193 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Jorge L.G.C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed response. (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.[2]

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The Court does not need a reply to rule and therefore issues this Order before the reply deadline to avoid further irreparable harm and delay in requested relief.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention.  On September 13, 2023, Petitioner approached U.S. Border Patrol to request asylum.  (ECF No. 6-1 at 8.)  The U.S. Department of Homeland Security ("DHS") detained Petitioner, processed him, determined he had a credible fear of persecution in his home country, and instituted immigration proceedings.  (*Id*. at 18, 21, 26.)  On October 6, 2023, Petitioner was released from DHS's custody and paroled into the United States.  (*Id*. at 21, 23.)

Since his release, Petitioner asserts he has worked as a mechanic to support his family, including his two children, mother, and sister.  (ECF No. 1 at 3, 4.)

Petitioner's immigration proceedings are still pending.  (*Id.* at 26–27.)  He is not subject to an order of removal.  (*Id.*)  Petitioner has never been convicted of a crime and has no pending criminal matters.  (*Id*. at 1.)  Although Petitioner was arrested and charged following a domestic dispute, all charges were dismissed on April 16, 2026.  (*Id.* at 4, 16–17, 23–24.)  That same day, the Salt Lake County District Court ordered Petitioner released.  (*Id.* at 24.)  It is unclear from the record why Petitioner was not released from detention at that time.

Three days later, on April 19, 2026, Petitioner was transferred to DHS custody.  (ECF No. 6-1 at 31.)  Over the last month in immigration detention, Petitioner has never been afforded a bond hearing or other custody determination hearing.  (ECF No. 1 at 4.)  Petitioner alleges Respondents have refused him a hearing.  (*Id.*)  Petitioner now challenges the lawfulness of his civil detention without a hearing through the instant Petition.  (ECF No. 1.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

Petitioner claims his detention without a hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–9.)  Respondents contend Petitioner is only entitled to the due process provided by statute and he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No. 6.)  The Court first addresses statutory authority before turning to the constitutional claim.

**A.   Statutory Authority**

Petitioner alleges he is not subject to mandatory detention under § 1226(c), rather he is entitled to a bond hearing under § 1226(a).[3]  (ECF No. 1 at 8.)  Respondents argue Petitioner is an applicant for admission subject to mandatory detention under § 1225(b)(2).  (ECF No. 6.)  Therefore, the parties agree Petitioner is not subject to § 1226(c) but disagree as to whether § 1226(a) or § 1225(b)(2) governs.

The INA generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings.  The expedited removal process is governed by § 1225.  The standard removal process, "section 240 proceedings," is codified at § 1229a.  *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025).  For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226(a) and (c).  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Under § 1226(a), the government has broad discretion whether to release or detain the individual.  *Id.*  Section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a

---

[3]   Unless otherwise noted, citations to statute refer to sections of Title 8 of the United States Code.

neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, § 1225(b)(2) mandates detention during expedited removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Here, Petitioner clearly falls under standard removal proceedings. The U.S. Department of Homeland Security issued Petitioner a Notice to Appear for "removal proceedings under section 240 of the Immigration and Nationality Act" (§ 1229a), thus, Petitioner's detention is now governed by § 1226(a) rather than § 1225(b). (ECF No. 6-1 at 26.) *See Rodriguez Diaz v. Garland*, 53 F.4th at 1196. These two statutes cannot be applied simultaneously. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025).

Moreover, the vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). Indeed, Respondents recognize the cases contrary to their position in this district (ECF No. 6 at 2), yet they offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision.

### B.   Fifth Amendment Violation

Petitioner alleges his detention without a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 5–7.) Respondents argue (1) Petitioner is only entitled to the process conferred by statute under 8 U.S.C. § 1225(b)(2) and (2) Petitioner does not have a liberty interest because Petitioner encountered law enforcement. (ECF No. 6 at 2–3.) The Court

4

disposed of the first argument above and need not address it again.  The Court now considers whether Petitioner has a liberty interest protected by due process and what procedures are owed.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.  *Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  Petitioner was paroled into the United States and since that time, he has worked to support his family.  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792

5

F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents contend Petitioner's encounter with law enforcement terminated his grant of release. (ECF No. 6 at 3.) However, Respondents provide no authority, and this Court is aware of none, establishing that an individual's liberty interest is stripped at the moment he encounters law enforcement. Even if such an encounter were a parole violation — a supposition posed by Respondents — the "Government's assertion that a parole grantee is entitled to no due process procedural protections prior to rescission of his parole grant is untenable." *Drayton v. McCall*, 584 F.2d 1208, 1214 (2d Cir. 1978). The Court thus rejects Respondents' assertion that Petitioner has no liberty interest by mere encounter with law enforcement, absent further process. *See, e.g., Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (rejecting the government's position that a petitioner's DUI arrest justifies re-detaining him without due process). The due process concerns are particularly acute here, where charges against Petitioner were dismissed. Moreover, there is no evidence in the record showing Petitioner's parole was in fact properly terminated or revoked for any reason at all, let alone an encounter with law enforcement. (*See generally* ECF No. 6-1.) *See also* 8 C.F.R. § 212.5 (setting out procedures for termination of parole).

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

6

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner has now been detained for a month without any opportunity to be heard as to his detention.  While in detention, he is unable to work and provide for his family.  Accordingly, this factor weighs strongly in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received any process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to an order of removal; his immigration proceedings are still pending.  At the time DHS granted Petitioner parole, it determined Petitioner was not a danger and that any flight risk could be mitigated by alternatives to detention.  (*See* ECF No. 6-1 at 23.)  Nor do Respondents now argue that Petitioner is a danger to the public or a flight risk.  And Petitioner has no criminal convictions.  Therefore, the risk that he is being detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden

7

associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

At a minimum, due process required notice and a hearing as to Petitioner's detention. Respondents did not provide Petitioner a pre-deprivation or post-deprivation hearing in a month of detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment. Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[4]

2. Respondents must IMMEDIATELY RELEASE Petitioner Jorge L.G.C. (A# 213-474-193) from custody. At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

3. Respondents must file a **notice of compliance** with this Order **by May 18, 2026.**

4. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

5. The Clerk is directed to serve the **California City Corrections Center** with a copy of this Order.

---

[4]    Petitioner also seeks an award of costs. (ECF No. 1 at 8.) The Court will consider any timely filed request for costs on a properly noticed and supported motion.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 15, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE